James C. Bastian, Jr. - Bar No. 175415
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:    (949) 340-3400
Facsimile:     (949) 340-3000
Email:          JBastian@shulmanbastian.com

Attorneys for Debtor, FCO Genesis I, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Case No. 8:22-bk-11460-SC |
|---|---|
| **FCO GENESIS I, INC.**, | Chapter 7 |
| Debtor. | **DEBTOR'S STATEMENT IN CONNECTION WITH TRUSTEE'S REQUEST FOR AUTHORITY TO ABANDON THE ESTATE'S INTEREST IN PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 554(a); DECLARATION OF KEVIN KIM IN SUPPORT THEREOF** |
| | [No Hearing Required] |

FCO Genesis, I, Inc. ("Debtor") here by submits it statement in connection with the Trustee's Request for Authority to Abandon the Estate's Interest in Property of the Estate Pursuant to 11 USC Sec. 554(a) filed as document number 28 ("Request") and approved by Order entered on or about August 16, 2024 (document number 30). While the Debtor did not oppose the Request, the Debtor feels compelled to submit this response to clarify the record and respectfully represents as follows:

In support of the Trustee's Request, the Trustee submitted the Declaration of Anerio Altman (the "Altman Declaration"), which sets forth purported facts regarding the Trustee's decision to abandon certain assets. In the Altman Declaration, Mr. Altman states that the "business practices of the Debtor are now suspect adding to the suspicion that claims against the Debtor may present viable offsets. The Debtor apparently provided assurances to vendors that their claims would be covered

by insurance policies up to 110% or 115% of their claims. After research it turns out that these were misrepresentations made by the Debtor and no such policies were ever acquired."

The Debtor strongly refutes the conclusions or inferences reached by Mr. Altman in the passage cited above, specifically that its business practices were "suspect" and that the Debtor made "misrepresentations." As correctly noted in the Request and the Altman Declaration, the Debtor was organized to implement business operations and opportunities arising out of the COVID-19 pandemic by providing PPE and other Covid related goods and services, like many other businesses that arose during the pandemic. There were a number of circumstances which led to the Debtor's failure as a business, not the least of which related to funding being reduced for PPE and other related products and services and disputes with vendors, including shipping vendors, which became the subject of litigation.

While the Debtor appreciates that the Trustee came to the conclusion that certain assets (specifically accounts receivable) needed to be abandoned based upon the expense and risk of recovery, the Debtor strongly refutes any allegation or suggestion that it or its principals engaged in any improper business activity or made any misrepresentations. Throughout the pendency of the Trustee's administration of this case, the Debtor has sat for numerous sessions of the continued 341(a) examination and meeting and provided numerous documents and a great deal of information to the Trustee. The Debtor has had every interest in assisting the Trustee and in maximizing the recovery for creditors.

Specifically, the Debtor, through its CEO Keven Kim pursuant to the attached Declaration of Keven Kim ("Kim Declaration"), represents the following:

- The Debtor never represented any goods ordered would have accounts receivable insurance that would protect customers or provided assurances to vendors that their claims would be covered by insurance policies up to 110% or 115% of their claims.
- The insurance that was represented to be in place only covered claims related to transportation and shipping losses through air, ocean and/or trucking losses at 110% . This insurance policy was issued by James World Wide ("JWW") in connection with logistic services provided.

- The customers who issued a PO to the Debtor were responsible to have accounts receivable insurance for any type of loss since they were all resellers.

- JWW owes the Debtor substantial sums and has itself engaged in improper business practices through its entire relationship with the Debtor. The Debtor's management discovered pending legal actions between JWW and Sae-Group (one of the Debtor's suppliers) whereby the Debtor learned that JWW has collected over $2MM based on a demand letter initiated by the Debtor for damaged product Sae-Group was trying to sell to the Debtor that were determined to be counterfeit and non-conforming to medical standards in connection with such litigation. Based on the Debtor's research, JWW was paid by Sae-Group and held the Debtor's inventory (valued in excess of $700K), held the Debtor's product deposit funds in cash (in excess of $667K) and collected funds without the Debtor's knowledge or consent until the Debtor's management learned of the pending legal action after the fact.

- JWW also included false documents asserting claims against the Debtor when JWW initiated its legal action.

- Claims filed against the Debtor by numerous creditors resulting from JWW's actions would have been mitigated and the Debtor's contemplated merger with a larger entity would have been completed.

- Additionally, JWW retained additional inventory and included documents created in connection with the lawsuit JWW filed against FCO stating that the parties entered into an "As-is" product sale. This is completely fraudulent as the Debtor never received such document. Additionally, JWW retained more inventory (gloves) that were not conforming and not authentic, and collected payment from the Debtor and claimed the product was conforming and authentic when it was not.

- In connection with CJOEL, the Debtor has found that one of the S. Korean/Vietnamese suppliers was sending partial payments to CJOEL based on the balance due to the Debtor and were simply using the funds for their own business and personal use, and did not turnover or release any funds to the Debtor.

While the Debtor understands why the Trustee elected to abandon assets of the Debtor given the challenges in collection and the lack of counsel willing to take any claims on a contingency basis, the Debtor, through the Kim Declaration, felt it important to correct the record with respect to its business practices and clarify its position that the accounts receivable collection claims against third party are valid.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

DATED: November ___, 2024        By:    /s/ James C. Bastian, Jr.
                                        James C. Bastian, Jr.
                                        Attorneys for Debtor, FCO Genesis I, Inc.

## **DECLARATION OF KEVEN KIM**

I, Keven Kim, hereby declare and state as follows:

1. I am the President of FCO Genesis I, Inc. (the "Debtor"). I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. This Declaration is made in support of the *Debtor's Statement in Connection with Trustee's Request for Authority to Abandon the Estate's Interest in Property of the Estate Pursuant to 11 U.S.C. § 554(a)* (the "Statement")[1] and in reference to the Trustee's Request for Authority to Abandon the Estate's Interest in Property of the Estate Pursuant to 11 USC Sec. 554(a) filed as document number 28 ("Request") and approved by Order entered on or about August 16, 2024 (document number 30). While the Debtor did not oppose the Request, the Debtor feels compelled to submit this response to clarify the record.

3. In support of the Trustee's Request, the Trustee submitted the Declaration of Anerio Altman (the "Altman Declaration"), which sets forth purported facts regarding the Trustee's decision to abandon certain assets. In the Altman Declaration, Mr. Altman states that the "business practices of the Debtor are now suspect adding to the suspicion that claims against the Debtor may present viable offsets. The Debtor apparently provided assurances to vendors that their claims would be covered by insurance policies up to 110% or 115% of their claims. After research it turns out that these were misrepresentations made by the Debtor and no such policies were ever acquired."

4. The Debtor strongly refutes the conclusions or inferences reached by Mr. Altman in the passage cited above, specifically that its business practices were "suspect" and that the Debtor made "misrepresentations." As correctly noted in the Request and the Altman Declaration, the Debtor was organized to implement business operations and opportunities arising out of the COVID-19 pandemic by providing PPE and other Covid related goods and services, like many other businesses that arose during the pandemic. There were a number of circumstances which led to the

---

[1] Unless otherwise noted, capitalized terms in this Declaration have the meaning as set forth in the Statement.

Debtor's failure as a business, not the least of which related to funding being reduced for PPE and other related products and services and disputes with vendors, including shipping vendors, which became the subject of litigation.

5. While the Debtor appreciates that the Trustee came to the conclusion that certain assets (specifically accounts receivable) needed to be abandoned based upon the expense and risk of recovery, the Debtor strongly refutes any allegation or suggestion that it or its principals engaged in any improper business activity or made any misrepresentations. Throughout the pendency of the Trustee's administration of this case, the Debtor has sat for numerous sessions of the continued 341(a) examination and meeting and provided numerous documents and a great deal of information to the Trustee. The Debtor has had every interest in assisting the Trustee and in maximizing the recovery for creditors. In particular, on behalf of the Debtor, I represent the following:

6. The Debtor never represented any goods ordered would have accounts receivable insurance that would protect customers or provided assurances to vendors that their claims would be covered by insurance policies up to 110% or 115% of their claims.

7. The insurance that was represented to be in place only covered claims related to transportation and shipping losses through air, ocean and/or trucking losses at 110%. This insurance policy was issued by James World Wide ("JWW") in connection with logistic services provided.

8. The customers who issued a PO to the Debtor were responsible to have accounts receivable insurance for any type of loss since they were all resellers.

9. JWW owes the Debtor substantial sums and has itself engaged in improper business practices through its entire relationship with the Debtor. The Debtor's management discovered pending legal actions between JWW and Sae-Group (one of the Debtor's suppliers) whereby the Debtor learned that JWW has collected over $2MM based on a demand letter initiated by the Debtor for damaged product Sae-Group was trying to sell to the Debtor that were determined to be counterfeit and non-conforming to medical standards in connection with such litigation. Based on the Debtor's research, JWW was paid by Sae-Group and held the Debtor's inventory (valued in excess of $700K), held the Debtor's product deposit funds in cash (in excess of $667K) and collected

funds without the Debtor's knowledge or consent until the Debtor's management learned of the pending legal action after the fact.

10. JWW included false documents asserting claims against the Debtor when JWW initiated its legal action.

11. Claims filed against the Debtor by numerous creditors resulting from JWW's actions would have been mitigated and the Debtor's contemplated merger with a larger entity would have been completed.

12. JWW retained additional inventory and included documents created in connection with the lawsuit JWW filed against FCO stating that the parties entered into an "As-is" product sale. This is completely fraudulent as the Debtor never received such document. Additionally, JWW retained more inventory (gloves) that were not conforming and not authentic, and collected payment from the Debtor and claimed the product was conforming and authentic when it was not.

13. In connection with CJOEL, the Debtor has found that one of the S. Korean/Vietnamese suppliers was sending partial payments to CJOEL based on the balance due to the Debtor and were simply using the funds for their own business and personal use, and did not turnover or release any funds to the Debtor.

14. While the Debtor understands why the Trustee elected to abandon assets of the Debtor given the challenges in collection and the lack of counsel willing to take any claims on a contingency basis, the Debtor feels that it is important to correct the record with respect to its business practices and clarify its position that the accounts receivable collection claims against third party are valid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November __15__, 2024, at _____, California.

_____
Keven Kim

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S STATEMENT IN CONNECTION WITH TRUSTEE'S REQUEST FOR AUTHORITY TO ABANDON THE ESTATE'S INTEREST IN PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 554(a); DECLARATION OF KEVEN KIM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 16, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Anerio V Altman**  LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com;ecf@casedriver.com
- **James C Bastian**  jbastian@shulmanbastian.com
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Sonia Singh**  ssingh@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 16, 2024 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE